**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

J. TRAVIS LASTER
VICE CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

January 9, 2017

Stephen E. Jenkins, Esquire
Marie M. Degnan, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Donald J. Wolfe, Esquire
Matthew E. Fischer, Esquire
Christopher N. Kelly, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801

Robert S. Saunders, Esquire
Jennifer C. Voss, Esquire
Ronald N. Brown, Esquire
Arthur R. Bookout, Esquire
Skadden, Arps, Slate, Meagher
& Flom LLP
One Rodney Square
Wilmington, DE 19801

RE: *ACP Master, Ltd., et al. v. Sprint Corporation, et al.*
C.A. No. 8508-VCL

*ACP Master, Ltd., et al. v. Clearwire Corporation*
C.A. No. 9042-VCL

Dear Counsel:

Defendants Sprint Corporation, Clearwire Corporation, and SoftBank Corporation filed their opening post-trial brief on December 20, 2017. The brief gave rise to two disputes: (i) whether the defendants violated an agreement on page limits and Rule 171 by submitting vast, lawyer-drafted evidentiary summaries under the guise of tables of contents

for appendices, and (ii) whether the defendants improperly used testimony from six of their own fact witnesses who testified live at trial.

### The "Tables of Contents" Issue

After the close of trial in this complex case, I asked the parties to provide thorough post-trial briefing that addressed all of the issues that they wanted to raise and did not try to incorporate by reference arguments made during earlier phases of the case, such as during the summary judgment phase. I also directed the defendants to submit a single post-trial brief because (i) Softbank currently controls Sprint and Clearwire, and (ii) during trial, the defendants presented a united front with aligned and closely coordinated positions. With this guidance, and after noting the "decreasing utility to increased pages," I asked the parties to discuss word limits that would enable them to provide adequate briefing.

The defendants proposed the following:

- Defendants'/Respondent's Opening Brief: 42,000 words;
- Plaintiffs'/Petitioners' Answering Brief: 42,000 words;
- Defendants'/Respondent's Reply Brief: 25,000 words; and
- Plaintiffs'/Petitioners' Sur-Reply Brief: 25,000 words.

The defendants' rationale for the oxymoronic "limit" of 42,000 words was that if Sprint, Clearwire and SoftBank each filed a separate post-trial brief (contrary to my ruling), they each would be entitled 14,000 words. The plaintiffs agreed. With some trepidation, I approved the stipulated order.

Using a rule of thumb of 250 words per double-spaced page, the parties anticipated providing me with **536 pages** of post-trial briefing. But this apparently was not enough for the defendants. They unilaterally submitted with their opening post-trial brief a set of appendices that they described as "compiling exhibits and testimony relevant to particular topics." Rather than a traditional table of contents for each appendix containing a neutral description of the attached documents, they submitted tables of lawyer-drafted characterizations of documents and key quotations from them that amounted to a set of issue-specific timelines for the defendants' fact-related arguments. In total, the "tables of contents" (a misnomer evidencing that we indeed live in a post-truth age) contain approximately another 75,000 words. The defendants incorporated the appendices by reference into the formal statement of facts in their brief. They effectively submitted a post-trial brief that approaches 120,000 words.

The plaintiffs correctly point out that this is an end-run around the word limits that the parties agreed to and that were incorporated in a stipulated order. They also correctly point out that Rule 171(j) does not contemplate what they defendants have done. That rule authorizes a party to "submit an appendix of documents or testimony from the factual record supporting the party's position," and it is customary to provide a neutral table of contents, but the defendants have distorted the concept of a "table of contents" beyond recognition by submitting evidentiary summaries and excerpts.

Other than doubling down on their "table of contents" argument, the defendants responded by citing a single case in which the court asked for appendices of this type. I did

not ask for the appendices. Instead, I indulged the parties' agreement to novel-length page allotments and entered those limits in the form of an order. The defendants then proceeded to violate those limits through unilateral action.

In answer to the plaintiffs' complaints, the defendants blithely suggest that if the plaintiffs believe "that different evidence supports [their] positions, [they] may submit [their] own appendices or counter-appendices." In other words, the defendants' answer for taking liberties in post-trial briefing is for the plaintiffs to be similarly cavalier.

What the defendants did was sharp practice. If the parties had not already agreed to limits that effectively were no limits at all (and which in the defendants' case circumvented my instruction to file a single brief), I would strike the defendants' appendices. But because the parties already have agreed to flood the court with material, it makes little sense to try to dam the river now.

Instead, I will attempt to re-balance the situation and remedy the defendants' strategy of briefing-by-ambush in the following ways. First, the plaintiffs may submit annotated versions of the defendants' appendices that contain their objections to the defendants' evidence and the plaintiffs' own responsive citations. To facilitate the plaintiffs' response, the defendants will provide the plaintiffs with WORD versions of their appendices. Second, the defendants will bear the cost and expenses incurred by the plaintiffs in responding to the defendants' appendices. This is only fair, because the defendants created this situation by violating the agreement regarding page limitations, which was implemented as an order, and contravening Rule 171. Within five days after

filing their opening post-trial brief, plaintiffs' counsel will submit a Rule 88 affidavit. I do not know how plaintiffs' counsel is billing their time for the case, but for purposes of complying with this ruling, plaintiffs' counsel will bill their time at their customary hourly rates.

## The Disputed Witness Testimony

The parties in this case took twenty-six depositions. In anticipation of trial, they went back and forth on the extent to which the depositions could be used at trial. They left it that depositions testimony could be used to the extent permitted by Court of Chancery Rule 32 and Rule of Evidence 801(d). In their pre-trial brief, the defendants cited depositions testimony from Bye, Cowan, Hersch, Hesse, Schell, and Stanton (the "Disputed Witnesses"). The plaintiffs object, contending that the defendants cannot rely on their depositions.

As a threshold matter, the defendants claim that they can rely on the depositions because of a ruling this court made during the lead-up to trial. The parties also disputed whether they needed to prepare and file designations and counter-designations, or whether they could lodge the transcripts. By order dated September 21, 2016, I permitted the parties to lodge the transcripts. Dkt. 474 (the "Lodging Order"). In reliance on the Lodging Order, the plaintiffs lodged the transcripts of Disputed Witnesses.

Contrary to the defendants' position, the plaintiffs did not give up their ability to object to the defendants' use of the transcripts by lodging them. The Lodging Order preserved the parties' ability to make objections: "If a portion of a deposition is used at

trial, and a party believes it is being used improperly, the party may object to its use. If a portion of a deposition is cited in post-trial briefing, and a party believes that the court should not consider it, they can make that argument." *Id.* ¶ 8. The order concluded: "The parties may lodge with the court the entire transcripts of depositions taken in the above-captioned actions, subject to any evidentiary objections that the parties may raise at trial or in their post-trial briefs without the need to make pre-trial excerpt designations." *Id.* ¶ 9. The order did not say, as the defendants now claim, that a party that lodges a deposition gives the other side a free pass to use it in any manner the other side might wish.

The question then becomes whether the defendants can use the depositions within the confines of Court of Chancery Rule 32 and Rule of Evidence 801(d). Court of Chancery Rule 32 authorizes the use of deposition transcripts in lieu of live witness testimony under specified circumstances. When Rule 32 applies, the Rules of Evidence are "applied as though the witness were then present and testifying." In other words, a party cannot raise evidentiary objections to admissibility based on the fact that the testimony takes the form of a deposition. For purposes of evidentiary analysis, when Rule 32 applies, the parties and the court ignore that fact and pretend that the witness is testifying live. *See* Ch. Ct. R. 32(b) ("Subject to the provisions of Rule 28(b) and paragraph (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence *if the witness were then present and testifying*" (emphasis added)).

Rule 32(a) identifies three situations in which a deposition may be used in this fashion. The parties only discuss the second, which states:

> The deposition of a party or of anyone who at the time of taking the deposition was an officer, director or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party may be used by an adverse party for any purpose.

Ch. Ct. R. 32(a)(2). This rule permits "an adverse party" to use a deposition falling within the rule "for any purpose." The defendants are not adverse to the Disputed Witnesses, and therefore they cannot use their depositions under Rule 32(a)(2). Under Rule 32(c), the fact that the plaintiffs lodged the transcripts of the Disputed Witnesses does not change the analysis. *See* Ch. Ct. R. 32(c) ("The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, but this shall not apply to the use by an adverse party of a deposition under paragraph (a)(2) of this rule.")

When not used for a purpose authorized by Court of Chancery Rule 32, a deposition transcript is hearsay. *See In re Asbestos Litig. Carter Trial Grp.*, 1992 WL 390617, at *2 (Del. Super. Ct. Oct. 26, 1992). Therefore, its proponent must identify a basis for using the transcript in lieu of live testimony. Unlike in the situations contemplated by Rule 32, which dispense with this step by contemplating that the rules of admissibility are "applied as though the witness were then present and testifying," a party using a deposition outside of Rule 32 must first address the use of the transcript. One means is if testimony meets an

exception under Rules of Evidence 803 or 804. Another means is if the testimony falls within an exclusion from the hearsay rule under Rule of Evidence 801(d).

Rule of Evidence 801(d) identifies two situations that are classified as "not hearsay." The first is a prior statement by the witness. Under this exception, a statement is "not hearsay" if

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with this testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person.

D.R.E. 801(d)(1). The defendants can use the deposition transcripts of the Disputed Witnesses if their use falls within this rule, but there are few instances in their opening brief where the testimony meets this exception. This is not surprising. The defendants are not in the business of citing inconsistencies in their own witnesses' testimony, nor in their opening brief are they frequently seeking to "rebut an express or implied charge . . . of recent fabrication or improper influence or motive." The identification of a person was not generally at issue.

The second exception under Rule 801(d) is an admission of a party-opponent. The defendants cannot invoke this rule because the testimony of their witnesses is not an admission of a party-opponent.

The plaintiffs are therefore entitled to an order striking references in the defendants' pretrial brief to the deposition testimony of the Disputed Witnesses. Within five days of this ruling, the defendants shall file a revised brief retaining only those citations that they

believe fall within Court of Chancery Rule 32(a) or Rules of Evidence 801(d)(1), 803, or 804. The defendants shall provide the plaintiffs with a blacklined version and a table that identifies each citation that has been retained and which provides a specific explanation as to why the defendants can rely on the testimony. To make sure the plaintiffs are not short-changed on time, the date for their answering brief shall be pushed back by the number of days the defendants use, with the days coming out of the time allotted to the defendants for their reply.

This ruling does not limit the plaintiffs' ability to use the deposition transcripts to the extent consistent with Rule 32, Rule 801(d), or other evidentiary rules. Nor does it limit the defendants' ability, once the plaintiffs have relied on particular testimony, to respond. At that point, Rule 801(d)(1)(B) may apply more clearly. Or other doctrines may come into play, such as the rule of completeness. *See* Ch. Ct. R. 32(a)(4); D.R.E. 106.

Sincerely yours,

*/s/ J. Travis Laster*

J. Travis Laster
Vice Chancellor

JTL/krw